EXHIBIT A

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**CASE NO. 20-CI-_915_**

**JAMES CLEMONS**        **PLAINTIFF**
660 Barley Circle
Crittenden, Kentucky 41030

v.

**HILLSHIRE BRANDS COMPANY,**        **DEFENDANT**
A wholly owned subsidiary of
Tyson Foods, Inc.
1099 Bob Huber Drive
Alexandria, Kentucky 41001

Serve:
CT Corporation System
306 West Main Street, Suite 512
Frankfort, Kentucky 40601

---

**COMPLAINT AND JURY DEMAND**

---

**COMES NOW**, Plaintiff, James Clemons, by and through counsel, and for his Complaint and Jury Demand against the Defendant, Hillshire Brands Company, a wholly owned subsidiary of Tyson Foods, Inc., states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.   Plaintiff, James Clemons was a resident of Kenton County, Kentucky during the factual events described in the Complaint. Mr. Clemons relocated to Grant County, Kentucky prior to filing this Complaint.

2.   Defendant Hillshire Brands Company ("Hillshire") is a for-profit corporation headquartered in Springdale, Arkansas, and has operated a large facility in Campbell County, Kentucky at all times relevant to this Complaint.

# EXHIBIT A

3. This Court has jurisdiction over the parties to, and subject matter of, this dispute under 29 U.S.C. §2617(a)(2) and applicable law.

4. Venue is appropriate in this Court.

**FACTS**

5. Plaintiff incorporates the previous paragraphs of this Complaint as if fully rewritten.

6. Mr. Clemons was hired by Defendant at its Claryville, Kentucky facility as a shift supervisor in 2016 Defendant is a multinational corporation that operates in the food industry. Defendant is the world's second largest processor and marketer of chicken, beef, and pork, and annually exports the largest percentage of beef out of the United States.

7. Defendant has 50 or more employees.

8. Mr. Clemons is highly skilled, and trained in USDA food safety and compliance, first response, and machine operation.

9. In spring 2019, Mr. Clemons began experiencing crippling neck pain and headaches with increasing frequency, which adversely affected his ability to, without limitation, sleep, walk, move, and work.

10. On September 26, 2019, texted Defendant's Operations Superintendent, Lori Lucas, to keep her apprised of his condition:

# EXHIBIT A

> SEP 26, 2019 AT 6:52 PM
>
> Just want to fill you in on my current situation. Along with my root canal if you remember me telling you I've been having issues with my hip and neck. Well I have to meet with a specialist orthopedic for my neck first as I might have a pinched nerve which is causing my issues. I'm going to have to use my last two doctors days for tonight and tomorrow. I'm not sure if they are going to want to do surgery or what. But that's where I am at.

11.   Ms. Lucas responded with interrogation and argument:

> James
> You have been work with the neck issue up till now right? I will have to check, but the doctor days are for people in tech position like what you used to do, not supervisors, which is considered management. I know o don't get doctor days. This is end of year close this weekend and it's your weekend to work so it would not be just these 2 days.

12.   Ms. Lucas then down-played Mr. Clemons' condition:

> I have to be honest here. I don't understand. I personally deal with all those things myself. Supervisors don't do physical work so I am sure your team work do what ever needed.

3

# EXHIBIT A

13. Ms. Lucas then inexplicably complained that Mr. Clemons didn't understand how difficult *her* job is:

> I do care. But it's everyone I have considered along with the plant needs. I don't of have the luxury of worry about one thing. But others actions effects everyone. You may never fully understand that. Moving forward I will not remind you of how it effects all.
> I can see I am not going to get you to see all I have been trying too. And I will ↓ lebate it.

14. In October 2019, physician, Howard J. Schertzinger, Jr., M.D., diagnosed Mr. Clemons with bulging disks in his C4 and C5 vertebrae. Accordingly, Dr. Schertzinger recommended that Mr. Clemons receive eight weeks of physical therapy and traction. He further prescribed Mr. Clemons certain medications to alleviate his symptoms. One of those medications required Mr. Clemons to abstain from work for six hours after taking it.

15. On November 4, 2019, a second physician, Rebecca E. Popham, D.O. certified Mr. Clemons as suffering from a "Serious Health Condition." Specifically, Dr. Popham certified *as medical facts* that (i) Mr. Clemons suffered from cervical pain and hip pain; (ii) that it was *medically necessary* for Mr. Clemons to be off of work due to episodic flare-ups on an intermittent basis; and (iii) that his flare-ups typically happened twice per week for ten hours per day. That day, Mr. Clemons informed Ms. Lucas that he had completed physical therapy, and that his physicians may recommend more therapy, injections, or surgery.

16. On November 20, 2019, Mr. Clemons informed Ms. Lucas that Dr. Schertzinger was putting him on more medication, and that he was concerned with

4

Case: 2:21-cv-00016-WOB-EBA Doc #: 1-1 Filed: 02/04/21 Page: 5 of 12 - Page ID#: 12
Filed 20-CI-00915 12/14/2020 Taunya Nolan Jack, Campbell Circuit Clerk

EXHIBIT A

certain symptoms – so concerned that he ordered Mr. Clemons an MRI. The extent of Ms. Lucas' communication in response to this was "ok."

17. On December 9, 2019, Mr. Clemons disclosed further details of his disability to Ms. Lucas in a text message:

> You asked me how I had this pain a while back and it was[n't] a problem but is now because it's because my C4 and C5 disks in my neck are bulging into my spinal nerve. They are two below being herniated to where they could burst. I am getting on different medicine that will not affect me working so that's a plus. Right now, we are going to try to resolve this without surgery. I have to attend six to eight sessions of traction. They are going to stretch my neck apart for 20 minutes at a time to relive pressure along with steroids. If this doesn't work, they are going to give me an epidural in my neck and discuss other options.

18. Mr. Clemons received no response to the above text message.

19. Pursuant to his doctor's instructions, Mr. Clemons requested an accommodation of Defendant in the form of a modified work schedule that would allow him to take his prescribed medications with enough time to avoid the negative six-hour window.

20. Mr. Clemons further requested intermittent FMLA leave for essential doctors' appointments, and time when his disability prevented him from working.

21. Mr. Clemons' requests would have put no meaningful burden on Defendant. Instead of working with Mr. Clemons to accommodate his reasonable requests, however, management greeted those requests with suspicion, mockery, and hostility. For instance, Anthony Adams, Mr. Clemons' immediate supervisor, and others in authority, told him that his condition was not serious and/or that he was faking it.

22. Defendant terminated Mr. Clemons on December 22, 2019.

# EXHIBIT A

23.    At the time of his termination, Mr. Clemons had a salary of $58,000, plus overtime, an annual bonus, and 401(k) benefits.

24.    Plaintiff filed his Charge of Discrimination with the EEOC on February 10, 2020, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), in EEOC Charge No. 437-2020-00652.

25.    The EEOC issued Plaintiff a notice of right to sue on December 7, 2020.

## CAUSES OF ACTION

### Count I
### Violation of 29 U.S.C. §2615(a)(1):
### FMLA Interference

26.    Plaintiff incorporates the preceding allegations of this Complaint as if fully rewritten.

27.    Under 29 U.S.C. §2615(a)(1), it is unlawful for Defendant to interfere with, restrain, or deny the exercise of, or Plaintiff's **attempt** to exercise any right provided under the FMLA.

28.    Per 29 U.S.C. §2612(a)(1)(D), Plaintiff is entitled to 12 weeks of unpaid leave during any 12-month period for a serious health condition that makes him unable to perform his job responsibilities and functions. A serious health condition under the FMLA is one: (1) where Plaintiff had been an inpatient in a medical facility; or, (2) where he was receiving continuous treatment from a health care provider.

29.    At all times relevant to this Complaint, Plaintiff was eligible for FMLA leave for the conditions so described.

30.    At all times relevant to this Complaint, Defendant was an "employer" as defined by the FMLA, and subject to its requirements.

Package : 000008 of 000014    Presiding Judge: HON. DAN ZALLA (617377)    Package : 000008 of 000014

## EXHIBIT A

31. Under the circumstances described in this Complaint, Plaintiff was qualified for FMLA leave.

32. As described in this Complaint, Plaintiff noticed Defendant of his intent to take FMLA leave for reasons that qualified him for such leave.

33. As described in this Complaint, Defendant denied and/or interfered with Plaintiff's ability to take the FMLA leave he was entitled to. Specifically, Defendant's conduct described in this Complaint interfered with Plaintiff's FMLA-created right to medical leave and/or reinstatement after a qualified leave.

34. By interfering with Plaintiff rights arising under the FMLA in the manner described in this Complaint, Defendant directly and proximately harmed Mr. Clemons in an amount exceeding the jurisdictional threshold of this Court to be determined by the trier of fact. Per 29 U.S.C. §2617(a)(2), Mr. Clemons is also entitled to a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the Defendant.

### Count II
### Violation of 29 U.S.C. §2615(a)(2):
### FMLA Retaliation

35. Plaintiff incorporates the preceding allegations of this Complaint as if fully rewritten.

36. As described in this Complaint, Plaintiff engaged in activity protected by the FMLA.

37. As described in this Complaint, Defendant knew Plaintiff exercised his rights under the FMLA.

7

Package:000009 of 000014
Presiding Judge: HON. DAN ZALLA (617377)
Package : 000009 of 000014

# EXHIBIT A

38. Thereafter, Defendant took and/or threatened to take the adverse employment action of terminating Plaintiff's employment because he exercised his rights under the FMLA.

39. By retaliating and/or threatening to retaliate against Plaintiff for exercising his rights under the FMLA in the manner described in this Complaint, Defendant directly and proximately harmed Plaintiff in an amount exceeding the jurisdictional threshold of this Court to be determined by the trier of fact. Per 29 U.S.C. §2617(a)(2), Plaintiff is also entitled to a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by Defendant.

### Count III
### Violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and Kentucky Revised Statute §344.040: Disability Discrimination

40. Plaintiff incorporates the preceding allegations of this Complaint as if fully rewritten.

41. At all times relevant to this Complaint, Plaintiff suffered a disability, and/or Defendant regarded him as disabled, within the meaning of the ADA, the Kentucky Civil Rights Act, Kentucky Revised Statute §344.040 ("KCRA"), and applicable law.

42. At all times relevant to this Complaint, Defendant knew Plaintiff was disabled, and/or regarded him as such.

43. At all times relevant to this Complaint, Plaintiff was qualified for his position as a shift supervisor at Defendant's facility.

44. Plaintiff suffered the adverse employment action of termination by the Defendant because of his disability within the meaning of, and in violation of, the ADA, the KCRA, and applicable law.

# EXHIBIT A

45. Defendant's conduct described in this Complaint constitutes disability discrimination within the meaning of the ADA, KCRA, and applicable law.

46. Due to Defendant's violation of the ADA and KCRA as described in this Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

### Count IV
### Violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and Kentucky Revised Statute §344.040: Failure to Accommodate

47. Plaintiff incorporates the preceding allegations of this Complaint as if fully rewritten.

48. At all times relevant to, and as described in, this Complaint, Plaintiff was disabled within the meaning of the ADA and the KCRA, and/or Defendant regarded him as so disabled.

49. At all times relevant to this Complaint, Plaintiff was qualified for his position as a shift supervisor at Defendant's facility, with or without an accommodation.

50. At all times relevant to this Complaint, Defendant knew or had reason to know about Plaintiff's disability within the meaning of the ADA and the KCRA.

51. Plaintiff requested a reasonable accommodation as described in this Complaint within the meaning of the ADA and the KCRA.

52. Defendant failed to accommodate Plaintiff's requested accommodation as described in this Complaint within the meaning of the ADA and KCRA.

53. As a direct and proximate result of Defendant's failure to accommodate Plaintiff's disability within the meaning of the ADA and KCRA, as described in this

9

# EXHIBIT A

Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court.

## Count IV
### Violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and Kentucky Revised Statute §344.040: Retaliation

54. Plaintiff incorporates the preceding allegations of this Counterclaim as if fully rewritten.

55. Mr. Clemons engaged in protected activity under the ADA when he asked Defendant to accommodate his disability, as described in this Complaint.

56. Defendant knew about Mr. Clemons' disability at all times relevant to this Complaint, and knew that he had requested an accommodation under the ADA

57. Defendant took the adverse action of termination against Mr. Clemons because he requested an accommodation under the ADA and KCRA, as described in this Complaint.

58. As a direct and proximate result of Mr. Clemons' engagement in ADA-protected activity, Defendant terminated Mr. Clemons' employment a mere weeks after his engagement, causing him injuries in an amount in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

## Count V
### Wrongful termination in violation of public policy

59. Plaintiff incorporates the preceding allegations of this Counterclaim as if fully rewritten.

10

## EXHIBIT A

60. Public policy favors Mr. Clemons exercising his rights under the ADA, FMLA, and KCRA, including without limitation, the acts of requesting FMLA leave, and an accommodation under the ADA and KCRA, and not being punished for doing so.

61. It is against public policy for Defendant to retaliate against Mr. Clemons for exercising his rights under the ADA, FMLA, and KCRA.

62. As a direct and proximate result of Defendant's violation of public policy, Mr. Clemons has suffered damages in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, James Clemons, prays for judgment against Hillshire Brands Company as follows:

A. Compensatory damages;

B. Damages in the form of back pay;

C. Damages in the form of front pay;

D. Damages for emotional distress;

E. Pre- and post-judgment interest on compensatory damages, damages for back pay, damages for front pay, and emotional distress damages;

F. Lost benefits;

G. An award of his attorney's fees, and costs;

H. An award of punitive damages; and

I. Such other relief the Court deems appropriate.

# EXHIBIT A

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (92364)
WHITTAKER LAW, LLC
1431 Walnut Street
Cincinnati, Ohio 45202
(513) 259-3758
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

*Attorney for James Clemons*